IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LESLIE SPEARS, *et al.*                                                    PLAINTIFFS

v.                          CASE NO. 4:22-CV-00994-BSM

CENTRAL ARKANSAS RADIATION
THERAPY INSTITUTE, INC.                                        DEFENDANT

<u>ORDER</u>

Central Arkansas Radiation Therapy Institute, Inc.'s motion for summary judgment [Doc. No. 29] is denied on plaintiffs' religious discrimination claims and granted on their retaliation claims.

I. BACKGROUND

Central Arkansas Radiation Therapy Institute, Inc. ("CARTI") provides medical services to cancer patients.  Statement of Undisputed Material Facts ¶ 1, Doc. No. 31 ("SUMF").  It adopted a mandatory flu vaccine policy in 2018.  *Id.* ¶ 43.  It also formed an Exemption Committee to review medical and religious exemption requests.  *Id.* ¶¶ 44, 47.  For religious exemption requests, the policy requires employees to submit an application with a letter from their religious leader, stating it is the doctrinal belief of their religion to deny all vaccinations. *Id.* ¶ 49.  If a request is denied, the employee is given time to provide proof of vaccination.  *Id.* ¶ 50.

In 2021, CARTI adopted a similar COVID vaccination policy for new hires and employees in leadership positions.  *Id.* ¶¶ 71, 75–77.  In November 2021, the Occupational Safety and Health Administration ("OSHA") ruled that employers with more than 100

employees had to ensure that their workforce received the COVID vaccination or an exemption.  *Id.* ¶ 83.  The Centers for Medicare and Medicaid Services ("CMS") amended the conditions for participating in the Medicare and Medicaid program to require that employers ensure that their workforce received the COVID vaccination or an exemption.  *Id.* ¶ 84.  Failure to comply could lead to monetary penalties, denial of payment, and termination from its programs.  *Id.* ¶ 85.  In 2021, CARTI received approximately seventy percent of its total revenue from Medicare and Medicaid payments.  *Id.* ¶ 196.

In December 2021, CARTI extended its COVID vaccine policy to require all its employees to submit proof of vaccination or to apply for an exemption by December 27, 2021.  *Id.* ¶¶ 86–87.  As with the flu vaccine policy, the Exemption Committee reviewed and decided all exemption requests.  *Id.* ¶ 89.  The Exemption Committee added CARTI's non-denominational chaplain as a voting member in December 2021.  *Id.* ¶ 91.

In 2021 and 2022, CARTI denied every religious exemption request submitted by radiation therapists and registered nurses but approved some medical exemption requests for employees in those positions.  Doc. No. 32-7.  CARTI has since lifted its mandatory COVID vaccine requirement.  Deposition of Theresa Suffern 104:25–105:5, Doc. No. 32-9.

A.    Leslie Spears

Leslie Spears began working at CARTI as a radiation therapist in 2003.  SUMF ¶ 24.  Spears is a member of Concord United Methodist Church in Lonoke, and she also attends Bayou Meto Baptist Church in Jacksonville.  *Id.* ¶ 110; Resp. SUMF ¶ 109, Doc. No. 32.

In September 2021, Spears filed an application with supporting documentation to

2

receive a COVID vaccine exemption for those occupying leadership positions. SUMF ¶¶ 106–08, 112–14. Spears sought this exemption despite not being in a leadership position because she expected that a leadership position would soon open. Resp. SUMF ¶ 103. She had three main objections to the vaccine: (1) it amounts to condoning abortion because the development and testing for COVID vaccines utilized aborted fetal cells; (2) it violates her belief that her body is a temple of God into which she should not introduce harmful, unclean, or impure substances; and (3) it violates her religious belief that she should follow her conscience. *See id.* ¶¶ 113–15; *see also* Br. Supp. Mot. Summ. J. 31, Doc. No. 30. Her request was denied. SUMF ¶ 116.

In October 2021, Spears filed an application with supporting documentation to receive an exemption from the flu vaccine despite having received a flu vaccine in 2018 and 2020 without seeking an exemption. *Id.* ¶¶ 51, 62–64. The Exemption Committee denied her request. *Id.* ¶ 68. It suggested that Spears obtain the flu vaccine via nasal spray if she had reservations about receiving the vaccine via injection. *Id.* ¶ 69. Spears received the flu shot instead of the nasal spray because it was unavailable. *Id.* ¶ 70.

After the COVID vaccine policy was extended to all employees, Spears submitted a second religious exemption application with supporting documentation similar to her first application. *Id.* ¶¶ 117–19; Resp. SUMF ¶ 120. The Exemption Committee denied Spears's request and offered her: (1) unpaid leave from January 4, 2022, to January 9, 2022, to obtain the first dose of the COVID vaccine and return to work on January 10, 2022; or (2) if she declined to receive the vaccine, she could voluntarily resign her employment. SUMF ¶¶

3

122–23.

On January 4, 2022, CARTI notified Spears that it did not have a record of her receiving the COVID vaccine. *Id.* ¶ 124. CARTI again offered her the option of taking unpaid leave to obtain the vaccine or voluntarily resigning. *Id.* ¶ 125. The day after Spears appealed her exemption denial, the Exemption Committee rejected her appeal *Id.* ¶¶ 126, 132. The Exemption Committee again offered Spears unpaid leave to obtain the vaccine or voluntary resignation. *Id.* ¶ 133. When Spears requested a second appeal, she was told that she was being fired. *Id.* ¶¶ 134, 136.

Spears sought unemployment benefits but the Arkansas Department of Workforce Services denied the request. *Id.* ¶ 194. Spears appealed the decision, but the denial was upheld. *Id.* ¶ 195.

In 2022, Spears requested and received religious exemptions from the COVID vaccine from the University of Arkansas for Medical Sciences ("UAMS") and Baptist Health, healthcare providers that are also subject to OSHA and CMS regulations. Resp. SUMF ¶ 195; Resp. Def.'s Mot. Summ J. 20, Doc. No. 33. She also received a religious exemption from the flu vaccine from UAMS. *Id.*

After filing a charge with the EEOC and receiving a right to sue letter, Spears filed this lawsuit asserting religious discrimination and retaliation. Compl. ¶¶ 2, 62, Doc. No. 1.

B. <u>Angie Chambers</u>

Angie Chambers began working at CARTI as a radiation therapist in 2000. SUMF ¶ 22. Chambers is a member of Our Lady of Fatima Catholic Church in Benton, and she also

4

attends Sacred Heart Catholic Church in Morrilton.  *Id.* ¶ 138.

In October 2021, Chambers filed an application with supporting documentation to receive a flu vaccine religious exemption despite having received a flu vaccine in 2018 and 2020 without seeking an exemption.  *Id.* ¶¶ 52, 54, 56, 58.  Chambers sought the exemption because: (1) she believed that CARTI would eventually implement a COVID vaccine mandate; and (2) growth in her faith convinced her that the flu vaccine was not a good idea for her.  Resp. SUMF ¶ 55.  The Exemption Committee denied the request.  SUMF ¶ 59.  The Exemption Committee recommended that Chambers receive a nasal spray vaccine if she had reservations about the injection.  *Id.* ¶ 60.  Chambers received the shot instead of the nasal spray because it was unavailable.  *Id.* ¶ 61.

In December, Chambers filed an application with supporting documentation to receive a COVID vaccine religious exemption.  *Id.* ¶¶ 137, 139–41, 144–45.  Like Spears, Chambers had three main objections to the vaccine: (1) it amounts to condoning abortion because the development and testing for COVID vaccines utilized aborted fetal cells; (2) it violates her belief that her body is a temple of God into which she should not introduce harmful, unclean, or impure substances; and (3) it violates her religious belief that she should follow her conscience.  *See* Resp. SUMF ¶¶ 139–41; *see also* Br. Supp. Mot. Summ. J. 31.  The Exemption Committee denied her request four days later.  SUMF ¶ 149.  As with Spears, the Exemption Committee offered Chambers: (1) unpaid leave from January 5, 2022, to January 9, 2022, to obtain the first dose of the COVID vaccine and return to work on January 10, 2022; or (2) if she declined to receive the vaccine, she could voluntarily resign her

employment.  *Id.* ¶¶ 122–23.

On January 4, 2022, CARTI notified Chambers that it did not have a record of her receiving the COVID vaccine and again offered her the option of taking unpaid leave to obtain the vaccine or resigning.  *Id.* ¶ 150.  The day after Chambers appealed the exemption denial, the Exemption Committee denied her appeal.  *Id.* ¶¶ 151, 156.  The Exemption Committee again offered Chambers unpaid leave to obtain the vaccine or voluntary resignation.  *Id.*  When Chambers requested a second appeal, she was told that she was being fired.  *Id.* ¶ 160.  Chambers's request for reinstatement was denied.  *Id.* ¶¶ 186–87.

Later in 2022, Chambers requested and received religious exemptions from the flu and COVID vaccines from UAMS.  Resp. SUMF ¶ 143.

After filing a charge with the EEOC and receiving a right to sue letter, Chambers joined Spears's lawsuit.  Compl. ¶¶ 2, 62.

C.    <u>Theresa Suffern</u>

Theresa Suffern began working at CARTI as a registered nurse in November 2019.  SUMF ¶ 35.  Suffern is a member of Christ the King Catholic Church in Little Rock.  *Id.* ¶¶ 165, 170.

In December 2021, Suffern notified CARTI that she had doubts as to whether she could obtain supporting documents for her religious exemption application before the December 27 deadline.  *Id.* ¶ 162.  She was informed to submit her portion of the exemption request by the December 27 deadline and that CARTI would contact her.  *Id.* ¶ 163.  The following day, Suffern submitted her religious exemption request.  *Id.* ¶¶ 164–67.  The

6

Exemption Committee gave Suffern until January 6, 2022, to submit supporting documentation. *Id.* ¶ 169. The following day, Father Erik Pohlmeier from Christ the King Church submitted a letter to CARTI stating that the Catholic Church is not opposed to COVID vaccines in general but that each individual Catholic must follow her own well formed conscience, and that Suffern had thoroughly explained the reasons for her conviction and that her reasoning was not outside Catholic teaching. *Id.* ¶ 170; Resp. SUMF ¶ 170. Suffern supplemented her application by stating that her objections to the vaccine are similar to those of Spears and Chambers: (1) it amounts to condoning abortion because the development and testing for COVID vaccines utilized aborted fetal cells; (2) it violates her belief that her body is a temple of God into which she should not introduce harmful, unclean, or impure substances; and (3) it violates her religious belief that she should follow her conscience. *See* SUMF ¶ 165; Resp. SUMF ¶¶ 167, 174–76, 179–80; *see also* Br. Supp. Mot. Summ. J. 31.

The Exemption Committee denied Suffern's request. SUMF ¶ 181. Similar to Spears and Chambers, the Exemption Committee offered Suffern: (1) unpaid leave from January 10, 2022, to January 14, 2022, to obtain the first dose of the COVID vaccine and return to work on January 17, 2022; or (2) if she declined to receive the vaccine, she could voluntarily resign her employment. *Id.* Two days after Suffern filed her appeal, it was denied. *Id.* ¶¶ 182–83. Suffern was fired the next day. *Id.* ¶¶ 191–92.

After filing a charge with the EEOC and receiving a right to sue letter, Suffern joined this lawsuit. Am. Compl. ¶¶ 2, 65, Doc. No. 17.

CARTI is moving for summary judgment on all of plaintiffs' claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Summary judgment is granted on plaintiffs' retaliation claims and denied on their religious discrimination claims.

### A.   Retaliation

Summary judgment is granted on plaintiffs' retaliation claims because plaintiffs did not substantively respond to CARTI's motion, but only moved to nonsuit. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Morrow v. United States*, 47 F.4th 700, 703–04 (8th Cir. 2022) (district court may dismiss action with prejudice

in response to plaintiffs' motion for dismissal without prejudice).  Although I fairly liberally grant nonsuit motions, plaintiffs' motion is denied because the record does not show that this is a retaliation case.

      B.    <u>Religious Discrimination</u>

      Summary judgment is denied on plaintiffs' religious discrimination claims.

      Title VII prohibits employers from discharging employees because of their religion. *See Jones v. TEK Indus., Inc.*, 319 F.3d 355, 358–59 (8th Cir. 2003) (citing 42 U.S.C. § 2000e–2(a)(1)).  To establish their prima facie case of religious discrimination, plaintiffs must show that they: (1) have a bona fide religious belief that conflicts with CARTI's COVID vaccine requirement; (2) informed CARTI of this belief; and (3) were fired for failing to comply with CARTI's COVID vaccine requirement.  *See id.* at 359.  Once plaintiffs establish a prima facie case, the burden shifts to CARTI to show that accommodation would have resulted in undue hardship.  *See Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam).

      The second and third prongs of plaintiffs' prima facie case are undisputed.  The dispute lies in the first prong and in CARTI's affirmative defense.  Therefore, two questions must be answered.  First, did each plaintiff have a bona fide religious belief that conflicted with receiving the COVID vaccine?  Second, would CARTI have suffered an undue hardship if it had exempted each plaintiff from receiving the COVID vaccine?  Summary judgment is appropriate only if no reasonable finder of fact could find that the answer to the first question is yes and the answer to the second question is no.

*1. Leslie Spears*

Summary judgment is denied on Spears's religious discrimination claim.

a.      Bona Fide Religious Belief

CARTI provides five principal arguments as to why Spears did not have a bona fide religious belief that conflicted with receiving the COVID vaccine.   First, Spears's disapproval of the COVID vaccine came from her own personal and medical beliefs and not a religious belief.  Br. Supp. Mot. Summ. J. 31; Reply Supp. Mot. Summ. J. 9–11, Doc. No. 34. Second,  Spears's objection to the use of aborted fetal cell lines in medical development and testing is illegitimate because she has taken and has conceded that she may take medicines in the future that were also derived from fetal cell lines.  Br. Supp. Mot. Summ. J. 32; Resp. Def.'s Mot. Summ. J. 20.  Third, Spears's disapproval of the COVID vaccine is not religious in nature because the Methodist faith does not oppose the COVID vaccine.  Br. Supp. Mot. Summ. J. 32.  Fourth, Spears voluntarily received vaccinations in the past without seeking a religious exemption.  *Id.* at 34.  Fifth, Spears's objections are not religious in nature because she submitted similar documentation to Chambers, and she and Chambers received help in submitting their documentation from the same outside source.  *Id.*

Spears counters CARTI's points as follows.  First, Spears argues that her personal and medical concerns about the COVID vaccine are intertwined with her religious belief that her body is a temple of God into which she should not introduce harmful, unclean, or impure substances.  Resp. Def.'s Mot. Summ. J. 20.  Second, Spears says that a reasonable fact finder could determine she had a bona fide religious belief that conflicted with receiving the

10

COVID vaccine since UAMS and Baptist Health made a finding in her favor in 2022. *Id.* Third, Spears argues that whether her faith has a doctrinal tenet opposing all vaccinations or the COVID vaccine does not by itself mean that her personal beliefs are unprotected. *Id.* at 21. Fourth, Spears contends that the fact that her documentation was similar to what Chambers submitted and that they both received help in submitting their documentation from the same outside source does not make her personal beliefs illegitimate, as she also submitted sufficient evidence supporting her personal religious beliefs. *Id.*

Having reviewed the record in the light most favorably to Spears, it appears that a genuine factual dispute remains as to whether Spears had a bona fide religious belief that conflicted with receiving the COVID vaccine. While CARTI pokes holes in Spears's credibility, credibility determinations are to be made by a finder of fact. Moreover, some of CARTI's arguments do not entitle it to judgment as a matter of law. Specifically, the overlap between Spears's personal and medical concerns about the COVID vaccine with her religious beliefs does not place Spears's claim outside the scope of Title VII's religious protections, as long as her view is part of a comprehensive religious belief system. *See Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024). Furthermore, the guarantee of the Free Exercise Clause is not limited to beliefs which are shared by all of the members of a religious sect. *See Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (reversing my decision in *Holt v. Hobbs*, No. 5:11-CV-00164, 2012 WL 993403 (E.D. Ark. Mar. 23, 2012)). Thus, the fact that the Methodist faith does not generally oppose the COVID vaccine does not make Spears's belief against the COVID vaccine non-religious. For these reasons, Spears has

11

produced enough evidence for a reasonable finder of fact to infer a prima facie case of religious discrimination.

b.    Undue Hardship

CARTI provides two principal arguments as to why it would have suffered an undue hardship if it had exempted Spears from its COVID vaccine policy.  First, if Spears had continued to work in a direct patient-care role without obtaining the COVID vaccine, it would have put CARTI's vulnerable, immunosuppressed patients, and its other employees at risk.  Br. Supp. Mot. Summ. J. 36–40; Reply Supp. Mot. Summ. J. 12–13.  Second, exempting Spears from the COVID vaccine policy would have caused it substantial economic harm in the form of lost CMS payments, the imposition of civil money penalties, and increased administrative and operating costs such as the cost of purchasing and providing N95 respirators and COVID test kits for Spears's use.  Br. Supp. Mot. Summ. J. 40–43; Reply Supp. Mot. Summ. J. 13–15.

In response, Spears contends that CARTI's arguments are undercut by the fact that CARTI granted medical exemptions for other radiation therapists and registered nurses. Resp. Def.'s Mot. Summ. J. 27.  Thus, the fact that CARTI allowed employees with medical exemptions in the same position to continue working around its staff members and with its immunocompromised patients demonstrates that CARTI was able to take appropriate precautions to protect its staff and patients.  *Id.* at 28.  Additionally, CARTI would not have lost CMS payments or violated OSHA regulations because her religious belief was a legitimate basis for an exemption.  *Id.* at 31.  Moreover, the cost of providing N95 respirators

and COVID test kits for her would not have caused CARTI to suffer an undue hardship since CARTI was able to afford to do so for other employees. *Id.*

There is a genuine factual dispute as to whether CARTI would have suffered an undue hardship if it had exempted Spears from receiving the COVID vaccine. *See Bellard v. Univ. of Tex. MD Anderson Cancer Ctr.*, No. 3:22-CV-88, 2024 WL 1079221, at \*10 (S.D. Tex. Feb. 9, 2024) (genuine issue of material fact as to whether physicians' requests for religious exemptions from state university cancer center's COVID vaccination mandate imposed undue burden on center's operation precluded summary judgment on physicians' Title VII religious discrimination claim against center because reasonable minds could differ as to the specific impact of each plaintiff's requested accommodation on the center as a whole); *Shields v. Main Line Hosps., Inc.*, No. 2:22-CV-03307-MRP, 2023 WL 7129953, at \*6–7 (E.D. Pa. Oct. 27, 2023) (genuine issues of material fact as to whether granting employee religious exemption would give rise to substantial cost to operations of business, increase health risks to employees and patients, and impose undue hardship on business operations precluded summary judgment in employee's religious accommodation case under Title VII against former employer based on termination of employment for refusing to comply with mandatory vaccination policy implemented in COVID pandemic); *Adams v. Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 2023 WL 6318821, at \*7–8 (D. Mass. Sept. 28, 2023) (fact that defendant elected to pick and choose among its employees rather than impose a zero-tolerance vaccination policy precluded defendant from summary judgment because it is possible that its exemption decisions were discriminatory and that granting another

13

exemption would not have created an undue hardship).  For these reasons, Spears has produced enough evidence to overcome summary judgment.

### 2. Angie Chambers

Summary judgment is denied on Chambers's religious discrimination claim.

a.      Bona Fide Religious Belief

CARTI provides six principal arguments as to why Chambers did not have a bona fide religious belief that conflicted with receiving the COVID vaccine.    First, Chambers's disapproval of the COVID vaccine came from her own personal and medical beliefs and not a religious belief.  Br. Supp. Mot. Summ. J. 31; Reply Supp. Mot. Summ. J. 9–11.  Second, Chambers's objection to the use of aborted fetal cell lines in medical development and testing is illegitimate because she has taken medicines that were also derived from fetal cell lines in the past.  Br. Supp. Mot. Summ. J. 32.  Third, Chambers's disapproval of the COVID vaccine is not religious in nature because the Catholic faith does not oppose the COVID vaccine.  *Id.* Fourth, the documentation supporting Chambers's religious belief is illegitimate because she included letters from religious leaders of churches of other Christian denominations that she does not follow.  *Id.* at 33–34.  Fifth, Chambers voluntarily received vaccinations in the past without seeking a religious exemption.  *Id.* at 34.  Sixth, Chambers's objections are not religious in nature because she submitted similar documentation to Spears, and she and Spears received help in submitting their documentation from the same outside source.  *Id.*

Chambers counters CARTI's points with her own contentions.  First, Chambers argues that her personal and medical concerns about the COVID vaccine are intertwined with her

religious belief that her body is a temple of God into which she should not introduce harmful, unclean, or impure substances.  Resp. Def.'s Mot. Summ. J. 22–23.  Second, Chambers argues that whether her faith has a doctrinal tenet opposing all vaccinations or the COVID vaccine does not by itself mean that her personal beliefs are not protected.  *Id.* at 23.  Third, Chambers contends that CARTI's argument about the illegitimacy of the letters she submitted is undercut by the fact that Suffern submitted letters from Catholic priests and that Suffern's request was still denied.  *Id.*  Fourth, Chambers contends that the fact that her documentation was similar to what Spears submitted and that they both received help in submitting their documentation from the same outside source does not make her personal beliefs illegitimate, as she also submitted sufficient evidence supporting her personal religious beliefs.  *Id.* at 23–24.  Fifth, Chambers says that a reasonable finder of fact could determine she had a bona fide religious belief that conflicted with receiving the COVID vaccine since UAMS made that exact finding in 2022.  *Id.* at 24.

As with Spears, there is a genuine factual dispute as to whether Chambers had a bona fide religious belief that conflicted with receiving the COVID vaccine.  Further, as with Spears, CARTI's credibility arguments are unpersuasive because credibility determinations are to be made by a finder of fact.  Moreover, the overlap between Chambers's personal and medical concerns about the COVID vaccine with her religious beliefs does not place Chambers's claim outside the scope of Title VII's religious protections, and the fact that the Catholic faith does not generally oppose the COVID vaccine does not make Chambers's belief against the COVID vaccine non-religious.

15

b.      Undue Hardship

A genuine factual dispute remains on whether CARTI would have suffered an undue hardship if it had exempted Chambers from receiving the COVID vaccine for the same reasons set forth in section III.B.2.b above.  Therefore, viewing the record in the light most favorable to Chambers, she has produced enough evidence to overcome summary judgment.

### 3. Theresa Suffern

Summary judgment is denied on Suffern's religious discrimination claim.

a.      Bona Fide Religious Belief

CARTI provides five principal arguments as to why Suffern did not have a bona fide religious belief that conflicted with receiving the COVID vaccine.   First, Suffern's disapproval of the COVID vaccine came from her own personal and medical beliefs and not a religious belief.  Br. Supp. Mot. Summ. J. 31–32; Reply Supp. Mot. Summ. J. 9–11. Second, Suffern's disapproval of the COVID vaccine is not religious in nature because the Catholic faith does not oppose the COVID vaccine.  Br. Supp. Mot. Summ. J. 32.  Third, Suffern voluntarily received vaccinations in the past without seeking a religious exemption. *Id.* at 34.  Fourth, the legitimacy of Suffern's exemption request is questionable because she falsely claimed that she never had COVID while employed at CARTI.  *Id.* at 35.  Fifth, the legitimacy of Suffern's exemption request is questionable because she allowed her 17-year-old son to receive the COVID vaccine so he could attend a high school class trip.  SUMF ¶ 168; Resp. Def.'s Mot. Summ. J. 25.

Suffern counters CARTI's points with her own contentions.  First, Suffern argues that

16

her personal and medical concerns about the COVID vaccine are intertwined with her religious belief that her body is a temple of God into which she should not introduce harmful, unclean, or impure substances.  Resp. Def.'s Mot. Summ. J. 24–25.  Second, Suffern argues that whether her faith has a doctrinal tenet opposing all vaccinations or the COVID vaccine does not by itself mean that her personal beliefs are not protected.  *Id.*  Third, Suffern contends that CARTI's arguments about the illegitimacy of her exemption request do not disprove that her beliefs were based on religion because her religious belief that she should follow her conscience is still legitimate and the fact that she allowed one of her two children to come to a different decision after pondering over it for months does not conflict with her belief that her faith allows different people to come to different conclusions on certain matters of morality such as whether to receive the COVID vaccine.  *Id.*

As with the claims of Spears and Chambers, there is a genuine factual dispute as to whether Suffern had a bona fide religious belief that conflicted with receiving the COVID vaccine.  As stated above, credibility determinations must be made by the finder of fact.  Moreover, as similarly pointed out above, the overlap between Suffern's personal and medical concerns about the COVID vaccine with her religious beliefs does not place Suffern's claim outside the scope of Title VII's religious protections, and the fact that the Catholic faith does not generally oppose the COVID vaccine does not make Suffern's belief against the COVID vaccine non-religious.

b.   Undue Hardship

A genuine factual dispute remains on whether CARTI would have suffered an undue

hardship if it had exempted Suffern from receiving the COVID vaccine for the same reasons set forth in section III.B.2.b above.  Therefore, viewing the record in the light most favorable to Suffern, she has produced enough evidence to overcome summary judgment.

## IV. CONCLUSION

For the foregoing reasons, CARTI's motion for summary judgment is denied on plaintiffs' religious discrimination claims and granted on their retaliation claims.

IT IS SO ORDERED this 2nd day of August, 2024.

_____
UNITED STATES DISTRICT JUDGE